IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RICHARD W. MARKOVICH and JANICE A. MARKOVICH,

    Plaintiffs,

  v.

UNITED STATES OF AMERICA,

    Defendant.

CIVIL ACTION NO. 2:20-cv-640

*ELECTRONICALLY FILED*

**JURY TRIAL DEMANDED**

## COMPLAINT IN CIVIL ACTION

AND NOW, come Plaintiffs, Richard W. Markovich and Janice A. Markovich, by and through their attorneys, George R. Farneth II, Esquire and The Farneth Law Group, LLC, and file this Complaint in Civil Action, averring as follows:

## PARTIES

1. Plaintiff, Richard W. Markovich ("Mr. Markovich"), is an adult individual who, at all times pertinent hereto, resided at 1215 San Pedro Street, Pittsburgh, Allegheny County, Pennsylvania 15212.

2. Plaintiff, Janice A. Markovich ("Mrs. Markovich"), is an adult individual who, at all times pertinent hereto resided at 1215 San Pedro Street, Pittsburgh, Allegheny County, Pennsylvania 15212

3. Mr. Markovich and Mrs. Markovich will sometimes hereinafter be collectively referred to as "Plaintiffs."

4. Defendant, United States of America ("Defendant"), is the party that owns operates and maintains the U.S. Department of Veterans Affairs and its divisions and subdivisions.

5. The U.S. Department of Veterans Affairs was established by Congress to administer the healthcare system for the Veterans of the United States of America, which includes health administration in the VA Healthcare System.

6. The mission statement for the U.S. Department of Veterans Affairs is: "To fulfill President Lincoln's promise 'To care for him who shall have borne the battle, and for his widow, and his orphan' by serving and honoring the men and women who are America's veterans."

7. The VA Healthcare System, through its facilities, provides a broad spectrum of medical, surgical and rehabilitative care for any veteran who served in the armed forces of the United States of America.

8. The VA Pittsburgh Healthcare System is a division of the US Department of Veterans Affairs, which provides healthcare to Veterans through its facilities at University Drive Campus in Pittsburgh, Pennsylvania and the A.J. Heinz Campus in O'Hara Township, Pennsylvania.

9. The VA University Drive Campus in Pittsburgh, Pennsylvania (hereinafter "VA University Drive") serves as an acute care facility and has 146 operating beds distributed among medicine, surgery, neurology and critical care.

10. The VA University Drive provides a wide range of outpatient services through its medical and hospital staff, including, doctors, nurses, therapists, counselors, and other specialists.

11. Veterans are seen daily at the VA University Drive for medical, surgical, psychological, and other care and treatment.

12. At all times pertinent hereto, Defendant was acting by and through its authorized agents, servants, employees, representatives, staff members and ostensible agents, including but not limited to Christianna Kreiss, M.D. ("Kreiss"), Melissa Hogg, M.D. ("Hogg"), Shahab Shaffiey, M.D. ("Shaffiey"), Wolfgang Schraut, M.D. ("Schraut"), Arturo J. Cardounel, M.D. ("Cardounel"), and other members of its medical and surgical staff who participated in the March 9, 2017 colonoscopy that was performed on Mr. Markovich and the subsequent medical and surgical care and treatment his condition required, all of whom were then and there acting within the course and scope of their employment or apparent employment with and in furtherance of the business operations of Defendant.

## NOTICE

13. On March 1, 2019, Plaintiffs served the Department of Veterans' Affairs Office of Chief Counsel with an executed Standard Form 95 form providing notice to the United States Government of the claims set forth below ("Claims").

14. By letter dated July 18, 2019, the Office of General Counsel for the U.S. Department of Veterans Affairs acknowledged receipt on March 5, 2019 of the executed Standard Form 95 and requested certain additional information and documentation. (see Exhibit A).

15. By letter dated February 27, 2020, Defendant denied Plaintiffs' claim.

## JURISDICTION

16. This action is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671.

17. Venue is proper within this district under 28 U.S.C. §1402(b) as the acts complained of occurred in the Western District of Pennsylvania.

18. The claims herein are brought against the United States of America pursuant to 28 U.S.C. §2671, et seq. (Federal Tort Claims Act), 42 U.S.C. §1983 (Civil Rights Violations) and

28 U.S.C. §1346(b)(1) for money damages as compensation for personal injuries that were caused by the negligent and wrongful acts and omissions of employees of the United States Government while acting within the scope of their offices and employment, under circumstances where the United States, if a private person, would be liable to the Plaintiffs in accordance with the laws of the Commonwealth of Pennsylvania.

**FACTS**

19. Mr. Markovich is a retired U.S. Air Force Staff Sergeant and Vietnam Veteran who was and is entitled to receive medical and surgical care and treatment through the VA Healthcare System.

20. On March 9, 2017 Mr. Markovich underwent an elective, routine, diagnostic colonoscopy ("Procedure") that was performed by Kreiss at the V.A. Hospital in Pittsburgh.

21. After the Procedure, Kreiss advised Mr. Markovich of the results of the Procedure and represented to Plaintiffs that there had been no complications, which she confirmed in a colonoscopy procedure report dated March 27, 2017 ("Report").

22. In fact, in the Report, which is dated eighteen days after the Procedure, Kreiss not only noted that the mucosa was normal and made no mention of any inflammation, tortuosity, stricture, or difficulty reaching and identifying the cecum, but she also did not mention that any complications had occurred.

23. Rather, the only remarkable finding Kreiss noted was moderate sigmoid diverticulosis.

24. Shortly after the Procedure, Mr. Markovich developed abdominal distention and excruciating abdominal pain.

25. It was later determined that during the Procedure Kreiss perforated Mr. Markovich's colon.

26. The colonic perforation unleashed a horrendous series of events, including severe sepsis, which nearly caused Mr. Markovich's death.

27. Mr. Markovich was emergently taken to the operating room where he underwent an exploratory laparotomy and repair of his perforated right colon which was performed by Hogg and Cardounel ("First Surgery").

28. During the First Surgery, Hogg and Cardounel discovered extensive free air, contaminated succuss within the abdominal cavity, moderate hemoperitoneum, petechial hemorrhage over most of the bowel and the mesentery, and a 3 cm perforation in Mr. Markovich's right colon which they supposedly repaired without complication using a stapling device.

29. An ABThera sponge was placed in the intra-abdominal cavity with a wound VAC placed over top and Mr. Markovich was transferred to the ICU intubated.

30. Overnight the patient was hemodynamically unstable, requiring increasing pressors and rising lactate.

31. As a result, Mr. Markovich was emergently taken back to the operating room on March 10, 2017 by Schraut and Cardounel ("Second Surgery").

32. During the Second Surgery, Schraut and Cardounel discovered serosanguineous fluid in Mr. Markovich's abdomen.

33. A new ABThera sponge was placed with a wound VAC over top and Mr. Markovich was taken back to the ICU.

34. On March 13, 2017 Schraut and Cardounel took Mr. Markovich back to the operating room for exploration and possible closure ("Third Surgery").

35. During the Third Surgery, Schraut and Cardounel again discovered serosanguineous fluid in Mr. Markovich's abdomen.

36. A new ABThera sponge was placed with a wound VAC over top and Mr. Markovich was taken back to the ICU.

37. On March 15, 2017 Schraut and Cardounel took Mr. Markovich back to the operating room for a re-exploratory laparotomy, exploration of the abdomen, and fascial closure ("Fourth Surgery").

38. Following the exploration of Mr. Markovich's abdomen, the surgical wound was closed, and he was transferred back to the ICU.

39. During his hospitalization, Mr. Markovich developed abdominal compartment syndrome, septic shock, respiratory failure, kidney failure requiring dialysis, acute liver failure, and a significant decline in his mental status all of which nearly caused his death.

40. At no time prior to the Procedure did Kriess or anyone else at the V.A. advise Plaintiff that he may have to undergo the First Surgery, Second Surgery, Third Surgery, or the Fourth Surgery.

41. His subsequent recovery was very slow, and he was unable to resume his normal activities for nearly one year.

42. In fact, Mr. Markovich is still not to baseline.

43. As a sole, direct, proximate, and legal result of Defendant's conduct as aforesaid, Mr. Markovich has suffered the following severe, serious and potentially permanent injuries, damages, losses, and harm:

    a. He developed abdominal compartment syndrome;

    b. He developed Severe sepsis;

c. He developed septic shock;

d. He developed respiratory failure;

e. He developed kidney failure requiring dialysis;

f. He developed acute liver failure;

g. He suffered a significant decline in his mental status;

h. He was so sick, he nearly died;

i. He was forced to undergo significant medical and surgical care and treatment, including diagnostic tests, studies, and invasive procedures, including the First Surgery, Second Surgery, Third Surgery, and Fourth Surgery (collectively "Surgeries") which would not have otherwise been necessary;

j. He is at increased risk for infection and other medical complications;

k. His recovery from the Procedure and the Surgeries was delayed for over a year;

l. He has suffered the onset of new pain, physical and functional limitations and other symptoms that would not have otherwise developed;

m. He has suffered permanent scaring and disfigurement;

n. He has suffered and/or in the future will suffer great pain, suffering, inconvenience, embarrassment and mental anguish;

o. His general health, strength and vitality have been impaired;

p. He has suffered and will continue to suffer a substantial loss of the enjoyment of the ordinary pleasures of life;

q. He has suffered and/or may suffer a loss of earnings and/or an impairment of his earning capacity;

r. He was required in the past and in the future he may require assistance with some or all of his activities of daily living;

s. He suffered a substantial loss of independence; and

t. His relationship with his wife and family has been severely affected.

## COUNT I

## PLAINTIFFS v DEFENDANT

## NEGLIGENCE, MALPRACTICE AND DEVIATION FROM THE STANDARD OF CARE

44. Plaintiffs incorporate herein by reference as though fully set forth at length the averments set forth in paragraphs 1 through 43 above.

45. Plaintiffs' severe, serious and potentially permanent injuries, damages, losses, and harm as aforesaid were the sole, direct, proximate, and legal result of the negligence, malpractice and deviation from the standard of care by Defendant, generally and in the following particulars:

    a. In failing to properly plan, prepare for and perform the Procedure;

    b. In allowing Kreiss, who lacked the requisite level of education, training, skill, and experience, to perform the Procedure;

    c. In perforating Mr. Markovich's colon when the medical literature confirms the perforation rate in patients undergoing a screening colonoscopy is exceedingly rare, approaching zero percent;

    d. In failing to promptly diagnose and repair the perforation that was caused during the Procedure;

    e. In allowing contaminated intestinal fluid to leak into Mr. Markovich's abdominal cavity;

    f. In allowing an infection and abscess to grow in Mr. Markovich's abdominal cavity;

    g. In failing to order intra-operative diagnostic studies that would have demonstrated a perforation occurred and the colonic perforation needed to be immediately repaired;

    h. In causing Mr. Markovich to need and have to undergo medical and surgical care and treatment, including diagnostic tests, studies, invasive procedures, the Surgeries, and a very prolonged recovery that would not have otherwise been necessary;

    i. In failing to timely diagnose and treat Mr. Markovich's colonic perforation, infection and abscess;

    j. In failing to properly and thoroughly assess Mr. Markovich's condition following the Procedure;

k.  In setting in motion a horrendous series of events that nearly caused Mr. Markovich's death;

l.  In failing to inform Plaintiffs of the severity of Mr. Markovich's condition;

m.  In failing to take immediate corrective repairs of Mr. Markovich's colonic perforation;

n.  In failing to timely, accurately and properly diagnose and treat Mr. Markovich's medical condition;

o.  In failing to properly and adequately monitor, assess and treat Mr. Markovich's condition during and following the Procedure;

p.  In violating the standard of care required of surgeons who perform colonoscopies;

q.  In causing and/or increasing the size and severity of Mr. Markovich's scarring;

r.  In failing to inform Plaintiffs that Kreiss lacked the requisite level of education, training, skill, and experience, necessary to properly and safely perform the Procedure without complications;

s.  In failing to timely order consultations with and/or interventions by medical specialists who possessed the requisite education, training, knowledge, skill and expertise necessary to properly and safely perform the Procedure without complications;

t.  In failing to ensure that Mr. Markovich received the proper and necessary medical and surgical care and treatment his condition required under the circumstances;

u.  In causing Mr. Markovich to suffer an increased risk of harm;

v.  In causing Mr. Markovich to suffer an increased risk of complications, including a diminished opportunity to survive;

w.  In causing Mr. Markovich to suffer great pain, suffering, inconvenience, embarrassment and mental anguish;

x.  In failing to inform Plaintiffs of its aforementioned acts and/or omissions; and

y.  In failing to adhere to and provide medical and surgical care and treatment to Mr. Markovich in accordance with the standard of care within the medical community.

46. As a sole, direct, proximate, factual, and legal result of the negligence, malpractice, and deviation from the standard of care by Defendant as aforesaid, Plaintiffs have suffered and will continue to suffer the aforementioned severe, serious and potentially permanent injuries, damages, losses, and harm.

WHEREFORE, Plaintiffs, Richard W. Markovich and Janice A. Markovich, demand judgment in their favor and against Defendant in an amount in excess of $75,000.00, together with interest, costs, punitive damages, attorneys' fees and such other relief as this Honorable Court deems appropriate.

## COUNT II

## PLAINTIFFS v DEFENDANT

## BATTERY/LACK OF INFORMED CONSENT/VIOLATION OF INFORMED CONSENT

47. Plaintiff incorporates herein by reference as though fully set forth at length the averments set forth in paragraphs 1 through 46 above.

48. By law, Defendant, and specifically Kreiss, was required to obtain Mr. Markovich's informed consent prior to the Procedure which required that it provide Plaintiff with a full and complete description of the Procedure it was recommending and would be performing, all reasonable alternatives to the Procedure, and all the recognized risks and complications associated with the Procedure.

49. At no time prior to the Procedure, did Kreiss or any other member of Defendant's surgical staff inform Mr. Markovich that during the Procedure he could suffer various injuries, risks, and complications, including but not limited to those he ultimately did suffer or that he would need four surgeries to correct the damage that was done during the Procedure, or that he would nearly die

as a result of Defendant's negligence, malpractice and deviation from the standard of care ("Risks and Complications").

50. Had Mr. Markovich been informed of the Risks and Complications prior to the start of the Procedure, Mr. Markovich likely would not have allowed Defendant, and specifically Kreiss, to perform the Procedure.

51. Because of the foregoing, Defendant, and specifically Kreiss, operated on Mr. Markovich without his informed consent and in direct violation of his legal rights.

52. As a sole, direct, proximate, factual, and legal result of Defendant, and specifically Kreiss, failing to obtain Mr. Markovich's informed consent as aforesaid, Plaintiffs have suffered and will continue to suffer the aforementioned severe, serious and potentially permanent injuries, damages, losses, and harm.

WHEREFORE, Plaintiffs, Richard W. Markovich and Janice A. Markovich, demand judgment in their favor and against Defendant in an amount in excess of $75,000.00, together with interest, costs, punitive damages, attorneys' fees and such other relief as this Honorable Court deems appropriate.

## COUNT III
## PLAINTIFFS V. DEFENDANT
## LOSS OF CONSORTIUM

53. Plaintiffs incorporate herein by reference as though fully set forth at length the averments set forth in paragraphs 1 through 52 above.

54. At all times pertinent hereto, Plaintiffs were and still are happily married and cohabitating as husband and wife.

55. As a sole, direct, proximate, factual, and legal result of Defendant's aforesaid conduct, Mrs. Markovich has suffered a loss of Mr. Markovich's love, affection, support, companionship, assistance, society, consortium, and the services he previously provided.

WHEREFORE, Plaintiffs, Richard W. Markovich and Janice A. Markovich, demand judgment in their favor and against Defendant in an amount in excess of $75,000.00, together with interest, costs, punitive damages, attorneys' fees and such other relief as this Honorable Court deems appropriate.

    Respectfully Submitted:
    **THE FARNETH LAW GROUP, LLC**

    *s/George R. Farneth II*
    George R. Farneth II, Esquire
    *Attorneys for Plaintiffs*

Date:  April 30, 2020